RODGERS v. UNITED STATES.

No. 4757.

District Court, E. D. Pennsylvania.

June 28, 1946.

B. Nathaniel Richter, of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., and James P. McCormick, Asst. U. S. Atty., both of Philadelphia, for the United States.

KALODNER, District Judge.

The plaintiff in this action seeks to recover from the United States certain benefits alleged to be due her under a National Service Life Insurance policy issued to her son, who, at the time of his death, had been discharged from service for several months.

It was alleged in the complaint and denied in the answer, that the premiums were paid through the date of the insured's death. This was the sole issue made by the pleadings. There is no question that the plaintiff's decedent died on September 26, 1943; and there is no doubt that the plaintiff has complied with the policy requirements relating to notice and filing of proofs of loss.

A motion by defendant for summary judgment was denied December 18, 1945, by Welsh, J. At the trial, the plaintiff proved, inter alia, the issuance of the insurance introducing in evidence a certificate thereof countersigned by the Administrator of Veterans' Affairs. The plaintiff then rested. Defendant moved for dismissal, pursuant to Federal Rules of Civil Procedure, rule 41(b), 28 U.S.C.A. following section 723c, upon the ground that the plaintiff failed to show that the policy had not lapsed by reason of nonpayment of premiums, and therefore had not proved her right to recover.

Plaintiff contends that nonpayment of premiums is a matter of affirmative defense, and hence the United States, in this case, bears the burden of sustaining the issue; that the delivery of a policy of insurance and the possession of the policy by the insured are prima facie evidence of payment of premiums prior to the date of delivery. Further, it is argued that "The delivery of a policy at a certain date waives

the payment of premiums prior to that time".

The plaintiff asserts that the "policy" in controversy on the life of plaintiff's son, James L. Buckley, was issued March 31, 1944, effective as of March 29, 1943. Buckley died, it may be noted, approximately six months prior to March 31, 1944. However, an examination of plaintiff's exhibit discloses that what she received was a document dated March 31, 1944, certifying that "James L. Buckley has applied for insurance in the amount of $10,000 payable in case of death." The document further recites that *"Subject to the payment of premiums required, this insurance is granted* under the authority of The National Service Life Insurance Act of 1940, and subject in all respects to the provisions of such Act, or any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which together with the application for this insurance, and the terms and conditions published under the authority of the Act, shall constitute the contract." (Emphasis supplied.) The certificate states that the insurance became effective on March 29, 1943.

 It is unnecessary to determine whether the late delivery of a policy operates as a waiver of premiums, for I am not convinced that the delivery of the certificate here operates as a waiver in view of its express wording, quoted above, and in view of the statutory provision, 38 U.S.C.A. § 802(*o*), which reads: " * * * Pending the promulgation of the terms and conditions of the five year level premium term policy and the printing of such policy, the Administrator may issue a certificate *in lieu thereof as evidence that insurance has been granted and the rights and liabilities of the applicant and of the United States shall be those specified by the terms and conditions of the policy when published."* (Emphasis supplied.)

Furthermore, I am of the opinion, in any event, that the late delivery of the certificate could not operate to waive the rights of the United States to the premiums. The insurance is granted in consideration of the monthly premiums, and the failure of payment of any premium (after expiration of the grace period) causes the policy to lapse. 38 U.S.C.A. § 802(a); Title 38 Code of Federal Regulations (1941 Supplement) §§ 10.3404, 10.3405, 10.3414 and 10.3416. Provision is made for waiver of premiums on account of total disability, but that does not appear to be involved here. The law is that no waiver of the right of the United States may be accomplished, except by the proper authority acting under powers granted to him. Wilber Nat. Bank v. United States, 1935, 294 U.S 120, 55 S.Ct. 362, 79 L.Ed. 798; United States v. Valndza, 6 Cir., 1936, 81 F.2d 615, 617; see United States v. Loveland, 3 Cir., 1938, 25 F.2d 447, reversed on other grounds 278 U.S. 665, 49 S.Ct. 184, 73 L.Ed. 571. Accordingly, the late delivery of the cer tificate could not constitute a waiver by the Administrator of Veteran's Affairs of the premiums required by the statute.

 Similarly, it is unnecessary to determine whether the late delivery of a policy estops the insurer from asserting the defense of nonpayment of premiums, for the late delivery of the certificate, even if it were considered, by stretching the imagination, a late delivery of the policy, could not estop the United States. Wilber Nat. Bank v. United States, supra; Sternfeld v. United States, D.C.N.D.N.Y.1929, 32 F.2d 789.

 The substantial issue raised by the instant motion, then, is whether the burden rests upon the plaintiff to establish, as part of her case, that the insurance contract was in force and effect at the time of the death of the insured. The contention of the plaintiff, of course, is that the defense, nonpayment of premiums, is an affirmative defense.

The controversy is one not new in the law of insurance, although an investigation of the cases reveals that it is entirely new where the insurer is the United States. A preliminary question, therefore, is whether the rules which have been applied to private interests are equally pertinent where the United States is concerned.

It may be noted that the government does not contend that a different or new rule is applicable merely because it is the Unit-

ed States. That the absence of such contention is in accord with the law seems plausible.

In the case of Lynch v. United States, 1934, 292 U.S. 571 at page 579, 54 S.Ct. 840, at page 843, 78 L.Ed. 1434, the Supreme Court stated that, "When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals more, in the case of Standard Oil Co. v. United States, 1925, 267 U.S. 76, at page 79, 45 S.Ct. 211, at page 212, 69 L.Ed. 519, it was said that, "When the United States went into the insurance business, issued policies in familiar form and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business." It follows, therefore, that "the United States in this case had a proprietary status, and does not appear in its sovereignty relation." Cushman v. United States, D.C.S.D.Cal.1942, 43 F.Supp. 810, 811, appeal dismissed, 9 Cir., 131 F.2d 1021. Thus, construction of policy provisions is not influenced by the fact that the insurer is the United States; rather, a liberal construction in favor of the insured has been given. See McClure v. United States, 9 Cir., 1936, 95 F.2d 744, 750, affirmed, 305 U.S. 472, 59 S.Ct. 335, 83 L.Ed. 296; Cushman v. United States, supra.

Finally, while there are numerous factors that may enter into consideration of placing the burden of proof,[1] "it is merely a question of policy and fairness based on experience in different situations." 9 Wigmore, Evidence, 3d Ed.1940, p. 275. In my opinion, there is no warrant in finding that the rules applicable to similar cases where both parties to the action are private parties should not be followed here merely because the insurer is the United States.

■ The nub of the controversy, then, is whether under the insurance law, nonpayment of premiums is an affirmative defense of the insurer. The courts have apparently split on the ultimate determination. On the one hand a number of cases conclude that the plaintiff has the affirmative, or that proof of payment of premiums is an essential part of the plaintiff's case, hence, the risk of non-persuasion rests upon that party. On the other hand, many cases have determined that nonpayment of premiums is an affirmative defense as to which the insurer carries the risk of non-persuasion. The cases are collected and discussed in 95 A.L.R. 745 et seq., an annotation to Topinka v. Minnesota Mutual Life Ins. Co., 1933, 189 Minn. 75, 248 N.W. 660, a case taking the former view.

The controversy apparently centers around the proper construction of the insurance contract: the cases in the former group taking the view that the policy is a year to year contract, payment of premiums therefore being a condition precedent; the cases in the latter group adopting the theory that a contract of insurance is a contract for life subject to forfeiture for failure to pay premiums, a condition subsequent. See 3 Couch on Insurance (1929) § 582. The prevailing weight of authority, however, adopts the theory that the payment of premiums, other than the first premium, is a condition subsequent, hence the defense is an affirmative one resting upon the insurer. See Roseberry v. Home Life Insurance Co., 1936, 120 Pa.Super. 450, 454, 183 A. 121; 95 A.L.R. 749. The fact that the insurer must prove a negative is not novel. See 9 Wigmore, Evidence, p. 274. The view of the weight of authority has long been accepted by the federal courts. See New York Life Ins. Co. v. Statham, 1876, 93 U.S. 24, 23 L.Ed. 789; Thompson v. Knickerbocker Life Ins. Co., 1881, 104 U.S. 252, 26 L.Ed. 765; Burnet v. Wells, 1933, 289 U.S. 670, 671, 679, 53 S.Ct. 761, 77 L.Ed. 1439; McMaster v. New York Life Ins. Co., C.C.Iowa 1899, 90 F. 40, affirmed, 8 Cir., 99 F. 856, reversed on other grounds 183 U.S. 25, 20 S.Ct. 10, 46 L.Ed. 64; Murray v. State Life Ins. Co., C.C.Pa. 1907, 151 F. 539, affirmed, 3 Cir., 1908, 159 F. 408; Security Mutual Life Ins. Co. v. Kleutsch, 8 Cir., 1909, 169 F. 104.

---

[1] The term is here used to indicate the burden of persuasion. The distinction set forth in Rule 1, A.L.I. Model Code of Evidence, is well recognized. See also, 9 Wigmore, Evidence, 3d Ed. 1940, §§ 2485 and 2487.

The defendant relies, nevertheless, on the case of Rackoff v. United States, 2 Cir., 1935, 78 F.2d 671. There, an amended answer asserted that the policy had lapsed for nonpayment of premium due October 1, 1919. The Court, 78 F.2d at page 672, stated: " * * * the insured evidently failed to pay his premium on October 1, 1919, and the case seems to have been tried on that theory. The plaintiff had the burden of proving that any later premiums were paid and offered no such evidence." The court then went on to the next issue, which is irrelevant here.

From the brief reference made by the Court, it is difficult to determine whether the burden placed upon the plaintiff therein was the burden of persuasion, or the burden of going forward with the evidence.[2] It may well be said because of the language employed by the court, that it had reference to the burden of going forward with the evidence.

However, despite the controversy, those courts, as in Topinka v. Minnesota Mutual Life Ins. Co., supra, which have held that proof of payment of premiums is essential to the plaintiff's case, have further decided that, by adducing evidence of the execution of the insurance contract and the granting of insurance, and upon proof of the event which matures the policy, the plaintiff establishes a prima facie case. The Topinka case is illustrative; see also 95 A.L.R. 755. The effect of such decision is to shift to the defendant insurer the burden of going forward with the evidence in rebuttal.

In the instant case, the plaintiff has established that the contract was executed and that the insurance was granted; there is no question as to the date and the death of the insured. Consequently, even if the risk of non-persuasion were on the plaintiff, the defendant herein has the burden of going forward with the evidence.

Since the defendant's motion to dismiss is made under Rule 41(d), it has the opportunity of producing evidence, and neither hardship nor injustice results. In this connection it may be added that generally the burden of persuasion settles on the party on whom it rests more lightly. That party in this case is the defendant, for it is a simple matter to show, by the proper records, that payments of the premiums were not received. Such evidence would be effective. See Roseberry v. Home Life Ins. Co., supra, 120 Pa.Super. at page 456, 183 A. at page 124. The plaintiff, on the other hand, would meet with the very difficult task of establishing payments made by a person now deceased, and would be faced with defeat early in the trial because of the deceased's failure to maintain records of payment.

For the reasons stated the motion is dismissed, and an order may be entered accordingly.

2 Commentators are agreed the burden of persuasion never shifts, although the burden of going forward with the evidence may shift during the course of trial. See 9 Wigmore, Evidence §§ 2485 and 2487. Therefore, although the defendant has the burden of persuasion, by adducing evidence of nonpayment, it can shift the burden of rebuttal to the plaintiff.