SILLER et al. v. UNITED STATES.

No. 13734.

United States Court of Appeals
Fifth Circuit.

April 1, 1952.

Henry P. Giessel, Geo. Red, Houston, Tex., for appellants.

Thomas E. Walsh, D. Vance Swann, Attorneys, Dept. of Justice, Washington, D. C., Brian S. Odem, U. S. Atty., William R. Eckhardt, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HOLMES, BORAH, and STRUM, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment for the United States, defendant below, in an action by the beneficiaries in a National Service Life Insurance policy issued by defendant upon the life of Gustave Joseph Siller while a member of the armed forces. The questions involved are (1) whether the policy had lapsed due to non-payment of premiums, and (2) if the policy had lapsed, whether it was reinstated upon payment of three months' premiums three days prior to the accidental death of the insured, which occurred in Texas City, Texas, on April 16, 1947. Siller was discharged from military service on July 6, 1946, his insurance premiums having been paid to August 21, 1946, by allotments from his military pay. Therefore, the period in dispute with regard to non-payment of premiums is from September 21, 1946, to April 16, 1947.

The beneficiaries filed a claim for benefits under the policy, and were notified by letter from the Veterans Administration that the claim had been disallowed because the policy had lapsed on September 22, 1946, which was the last day for which payments were shown by their records to have been made. Upon receipt of the letter, the brother of insured mailed to the Administration photostatic copies of two cancelled checks, one for $6.40, dated December 30, 1946, signed by insured's mother, and one for $19.20, dated April 13, 1947, signed by insured's brother, both checks being payable to the order of the Treasurer of the United States. Each check bore a notation in the lower left corner, "Pol. No. N–19–164–239," being the policy in suit, and the larger check also bore the name "Gustave Joseph Siller" in the lower left hand corner. After being confronted with this documentary proof, the Veterans Administration admitted that said checks had been received, but still claimed that the policy had lapsed on September 22, 1946, due to their having no record of premium payments for the months not covered by the checks. The letter of the Administration is, in part, as follows: "This has reference to your letter of August 8, 1947, together with photostatic copies of a cancelled check and an acknowledgment of remittances covering premiums in the sums of $6.40 and $19.20, respectively, in connection with your claim for National Service Life Insurance. The evidence you submitted has been carefully considered. The record shows that the payment of premiums in the sums indicated above, was received in this office on January 2, 1947, and April 13, 1947, respectively. However, the receipt of these sums may not be considered timely in view of the fact that the insurance lapsed for nonpayment of premiums on September 22, 1946, and regular monthly payments were not made for the months of September, October, November, 1946, February and March, 1947, as required by existing regulations. * * *"

At the beginning of the trial in the court below, appellant filed a motion for summary judgment on the ground that, if the policy had lapsed on September 21, 1946, it was reinstated, under existing regulations, upon receipt by the Veterans Administration of the check of April 13, 1947, covering payment of premiums for three months. The court denied the motion, and the case proceeded to trial before a jury. The appellee affirmatively alleged as its defense that the plaintiffs were not entitled to the proceeds of the policy for the reason that it had lapsed on September 22, 1946, for non-payment of premiums, and that said policy had never been reinstated by the Veterans Administration. On cross-examination, an official of the Veterans Administration testified that it was the practice to send a form letter to an insured if a remittance was received after the policy had lapsed, but that the Administration had no record of having mailed such a letter to the insured. Appellants contend that the letters from the Administration, referring to the payments of January 2 and April 13, 1947, reveal that an error had been made by the Administration in recording the receipt of those payments, and that the error was not corrected until photostatic copies of the checks were produced by the beneficiaries; that it was logical, therefore, to conclude that the Administration could have made similar errors in recording the receipt of other payments by the insured.

The defendant offered in evidence the insured's premium record card, which showed

that payments of premiums had been recorded up to August 21, 1946, and on January 2 and April 13, 1947; and contended that, if any other payment had been made, it would likewise have been so recorded, and that the absence of such recordation showed that no other payments had been made. Witnesses for defendant testified that the dates on the card were taken from the postmarks of the envelopes containing the payments, and that there was no way of determining the date of posting the receipt of the January and April, 1947, payments. Defendant also offered in evidence a certificate, signed by the Director of Insurance Accounts Service, Veterans Administration, that the signer had made a diligent search of the records of applied and unapplied remittances, and that no record of tender by, or on behalf of, Gustave Joseph Siller was found.

We agree with appellants that the burden of sustaining the issue of non-payment of premiums was on the defendant, Rodgers v. United States, D.C., 66 F.Supp. 663; 95 A.L.R. 745-754; but the question here is one of fact, and, on the assumption that the burden of persuasion settled on the government, on whom it rests more lightly, we think that the government has proven every fact that could be proven in this or any other like case. The government witness Dempsey stated he had contacted all of the district offices in Washington for a remittance made from Galveston, Texas, in the name of Siller, and had received a negative report from each of them. In addition, the witness Siller testified that he had made an independent investigation to determine whether or not his brother had sent in money other than the two checks of December 30, 1946, and April 13, 1947; that the post office authorities had examined and checked their records for the period in question, and the banks in Galveston had checked

their records for cashier's checks or any other form of money which might be sent from the banks, and no information was secured which would indicate that any remittances had been sent. There is a lot of hearsay testimony in this record on behalf of the mother and brother, but neither of these witnesses, living under the same roof with deceased before his death, would say that either knew or had been told by him that he had made any remittances other than the one in December, 1946, and the one in April, 1947.

The proof shows that the policy lapsed for non-payment of premiums on September 21, 1946. There is no evidence that any further premium was paid prior to the December payment of $6.40, when four payments were past due. The only other payment was the one of April 13, 1947, for $19.20, covering three monthly premiums. If we considered the payments timely, and gave appellants all that they claimed, these four payments would only bring the policy up to December 21, 1946. The insured died April 13, 1947. As stated, however, the payments were not in time to protect the policy. If the case were submitted to a jury, any finding by the jury that these intervening payments were actually made, though not credited to this policy, would rest upon speculation and conjecture. No tangible facts were proven which would justify a finding that the additional payments were made. If the case were here now on a jury verdict for the plaintiffs, based upon the facts in this record, it would be a verdict that should be reversed because unsupported by the evidence. The trial judge took substantially the same view in directing a verdict, and we are obliged to say that he was right. Neither may we infer that the policy was reinstated.

The judgment appealed from is affirmed.

Affirmed.